RECEIVED
AUG 17 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ST. MARTIN-IBERIA-LAFAYETTE COMMUNITY ACTION AGENCY | DOCKET NO. 6:17-cv-00966 |
| VERSUS | |
| U.S. DEPT. OF HEALTH & HUMAN SERVICES, ET AL. | MAG. JUDGE CAROL WHITEHURST<br>JUDGE DEE D. DRELL |

## RULING AND ORDER

This matter is before the court on application for a preliminary injunction on behalf of St. Martin-Iberia-Lafayette, Community Action Agency ("SMILE") and against the United States Department of Health and Human Services ("HHS")[1]. The case was initiated on July 28, 2017, when SMILE filed its complaint (Doc. 1) and an *Ex Parte* Motion for Temporary Restraining Order (Doc. 2). The motion was denied in a written ruling on August 1, 2017 (Doc. 10).

In a telephone conference, during T.R.O. consideration, the court agreed to conduct a hearing on the possible issuance of a preliminary injunction, remarking that the request for preliminary injunction was fairly made in the original pleadings. We therefore set the hearing on August 15, 2017. Notwithstanding that fixing, plaintiff SMILE elected to file a separate, specific

---

[1] Pursuant to section 702 of the Administrative Procedures Act, SMILE named as defendants HHS and Thomas E. Price, as Secretary of the Department of Health and Human Services, rather than the Office of Head Start. 5 U.S.C. §702.
The Office of Head Start manages grant funding and oversees local agencies that provide Head Start services. The Office of Head Start is an office of the Administration for Children & Families ("ACF"), which is a division of HHS. There are 12 Regional Offices throughout the United States and a Central Office in Washington D.C. SMILE is within Region Six which has an office located in Dallas, Texas. https://www.acf.hhs.gov/ohs.

motion for preliminary injunction, in which SMILE repeated its request for relief and added an additional ground of deprivation of due process rights.[2]

The hearing on the motion for preliminary injunction was conducted on August 15, as scheduled. Evidence was taken and argument, with legal authorities from both sides were accepted by the court. The matter is thus ripe for consideration.

For several reasons that follow, we must deny the preliminary injunction.

I. Findings

As detailed at the hearing, the evidence established the following. SMILE has held the position as grantee for the federally funded Head Start program in the tri-parish area (St. Martin, Iberia, and Lafayette) for a number of years. In December of 2016, SMILE appeared on HHS's Head Start, Region Six, Dallas, Texas Office radar when HHS received letters alleging problems at certain SMILE facilities regarding child abuse and neglect. HHS immediately went into action and in January of 2017, it dispatched a team for the purpose of making a surprise inspection. As a result, several deficiencies were verified and SMILE was required to correct these deficiencies within 30 days.

In that same time frame, SMILE was also in the status of reorganization having hired a new CEO/Director, Dr. Christopher Williams. Dr. Williams did expend efforts at addressing the situation but in a follow-up visit by HHS in April, it determined that SMILE had not fully addressed the deficiencies HHS found in January and subsequently addressed with SMILE. Additionally, several new deficiencies were found during that April follow-up visit. As a result, HHS undertook its own evaluation and ultimately made two relevant decisions. The first of these was the decision to terminate SMILE as the Head Start grantee for that tri-parish area. That

---

[2] Specifically, SMILE alleged that because an "emergency situation" did not exist, HHS could not operate under 45 C.F.R. §1304.4 but instead owed SMILE a hearing pursuant to 45 C.F.R §1304.3.

2

decision was appealed administratively and the appeal is pending. The second decision was made on an "emergency" basis- to suspend grant funding to SMILE for a period of 30 days, such suspension being potentially renewable for subsequent 30 day periods. HHS acted, ostensibly, pursuant to its own regulations, specifically, 45 C.F.R.§1304.4.

At the hearing, the HHS, Head Start, Region Six Program Manager from the Dallas, Texas Office, Kimberly Chalk, testified in detail as to the evaluative and decision making process in this particular instance. She stated that while suspensions of this nature were quite rare, action was necessary and warranted here. Specifically, Ms. Chalk testified that the emergency suspension was triggered and necessary because not only had SMILE failed timely to remedy deficiencies but continued to incur new ones even after being notified of those found during the January visit. In her observation, the primary concern in these cases is always the welfare of the children in Head Start programs. Because the deficiencies in this case primarily involved issues of abuse and neglect on SMILE's watch, the action of suspension was necessary.

We find Ms. Chalk's testimony to be most persuasive. In this case, HHS was notably diligent in pursuing resolution of the problems at SMILE. Yet, we still must answer the question of whether HHS's actions were proper in view of the present law in this area.

II.     Jurisdiction

Actions by a federal agency acting within its usual purview are most often exercised in accordance with the Administrative Procedures Act, 5 U.S.C. §§701-706. Section 702 of the Act provides in relevant part that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Additionally, Section 704 of the Act, entitled "Actions Reviewable" provides:

3

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaration order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

It is the second decision made by HHS, the issuance of the "Notice of Emergency Suspension", which is at the center of this motion. SMILE contends HHS acted illegally and wrongfully by citing past deficiencies as the basis for invoking an "emergency situation" under 45 C.F.R. §1304.4 and suspending SMILE's funding. Most of the argument is based upon SMILE's interpretation of the emergency suspension regulation and that regulation's failure to define adequately the term "emergency". HHS acknowledged during the hearing that the "Notice of Emergency Suspension" issued pursuant to §1304.4 is a final agency decision that is not administratively appealable to the Departmental Appeals Board. Thus, we find this court has jurisdiction and the matter is subject to judicial review.

III. <u>Defining "Emergency"</u>

HHS urges the court to consider the administrative law principle established in the Supreme Court case of <u>Chevron v. U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), often referred to as "Chevron Deference", wherein the Court held that courts defer to an agency's interpretation of statutes and/or regulations mandating it to take some action, unless the interpretation was unreasonable.

On the other hand, SMILE argues the court must give plain meaning to the term "emergency" when reading the suspension regulation as neither "emergency" nor "emergency situation" are defined within the Head Start regulations or statutes. SMILE then cites the definition

4

of "emergency" from a legal dictionary in support of its argument that the term is decidedly temporal in nature. While we agree that in this case the regulation regarding emergency suspension is subject to some interpretation, if we simply adopted SMILE's view, we would be doing exactly what Chevron decried. This we decline to do.

Ms. Chalk testified that it was the culmination of the reports of abuse and neglect, verification thereof, issuance of deficiencies regarding, dilatory response in correcting, and receipt of additional deficiencies in the same areas that resulted in the determination that action had to be taken to protect the interests of the children. This determination was not only reasonable, but it was in accord with the plain meaning of the word "emergency." Merriam-Webster defines an emergency as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." This is what Ms. Chalk and others within HHS saw, discussed and took action upon to ensure the Office of Head Start was acting in the best interest of the children.

IV. Conclusion

As such, we do not find that SMILE has proven it is entitled to a motion for preliminary injunction as a substantial likelihood does not exist that it will succeed upon the merits.

While this finding is sufficient for purposes of denying SMILE's motion, we also wish to point out that SMILE made no showing of irreparable harm. There was no evidence that HHS did anything to tarnish SMILE's reputation or that SMILE's reputation has in fact been harmed. Moreover, evidence regarding the state of many of SMILE's facilities gives the court considerable cause for concern regarding state licensure for SMILE. Without raising the questions of how these facilities passed bi-annual inspections and SMILE maintained licensing prior to this point, we question, even if we were to find in SMILE's favor, whether SMILE would be able to return to its position any sooner than the interim grantee, CDI, given the fact the State is acutely aware of the

5

hazards posed and, as indicated at the hearing, this appears to be the only obstacle to CDI's obtaining appropriate licensure. As such, we do not believe the public interest is any better served or would be served any faster under SMILE than it will be with CDI.

The standards for issuance of a preliminary injunction are: (1) substantial likelihood of success on the merits, (2) substantial threat of irreparable harm if the injunction is not issued, (3) the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. Cardoni v.Prosperity Bank, 805 F.3d 573, 579 (5th Cir.2015) (citation omitted). "The grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally demonstrate the need for its issuance." Valley v. Rapides Parish Sch. Bd., 118 F.3d 1047, 1050 (5th Cir.1997) (citation omitted).

Based on the foregoing conclusions, SMILE has not met the requirements for issuance. Accordingly, it is hereby

**ORDERED** that SMILE's motion for preliminary injunction (Doc. 16) is **DENIED**.

**SIGNED** at Alexandria, Louisiana this 17th day of August, 2017.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT